2003 D.S.D. 1

**UNITED STATES of America, Plaintiff,**

v.

**Marcos Antonio SALAMANCA, Defendant.**

**No. CR. 02–40052–01–KES.**

United States District Court, D. South Dakota, Western Division.

Jan. 23, 2003.

John Haak, Assist. U.S. Atty., Sioux Falls, SD, for plaintiff.

Brian Kirby, Bangs McCullen, Butler Foye & Simmons, Sioux Falls, SD, for defendant.

## MEMORANDUM OPINION AND ORDER

SCHREIER, District Judge.

[¶ 1]  On January 15, 2003, the government gave notice of proposed expert testimony of Carlos Bernadino.  Bernadino's testimony would relate to his translation of an undercover recording from Spanish to

English. Defendant, Marcos Salamanca, objected to this expert testimony on two grounds. First, the court had appointed Bernadino as an interpreter for Salamanca. Since July, Bernadino has interpreted conversations between Salamanca and his attorney; therefore, Bernadino's testifying for the government presented a conflict of interest. Second, Salamanca claimed that Bernadino lacked qualifications as an expert. Because Bernadino is not a federally certified interpreter, Salamanca argues that Bernadino does not have the requisite expertise. Salamanca requested a hearing on the matter, which was held on January 21, 2003. This order supplements the court's oral decision at the conclusion of the hearing.

## DISCUSSION

[¶ 2] An expert does not advocate during litigation but acts as a source of information and opinion. *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F.Supp. 1498, 1501 (D.Colo.1993). "Courts have the inherent power to disqualify expert testimony, if necessary, to protect privileges, which would be breached if an expert were to switch sides, and to preserve public confidence in the fairness and integrity of judicial proceedings." *Chamberlain Group, Inc. v. Interlogix, Inc.*, 2002 WL 653893, *2 (N.D.Ill.2002). *See also Sells v. Wamser*, 158 F.R.D. 390, 393 (S.D.Ohio 1994) (court has "inherent power to disqualify an expert witness when a conflict of interest exists"); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277–78 (S.D.Ohio 1988) (court can disqualify an expert "under any set of circumstances, or based upon the application of any particular legal theory" to protect privileges or the public confidence). Nevertheless, "[d]isqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993).

[¶ 3] A two part test governs the disqualification determination. *Chamberlain Group*, 2002 WL 653893 at *2. Did the first party have an objectively reasonable belief that a confidential relationship existed, and "[s]econd, did that party disclose any confidential information to the expert?" *English Feedlot*, 833 F.Supp. at 1502. To meet the test, the expert need not actually have disclosed any confidential information so long as "the expert's contact with the opposing party has created a risk of improper disclosure of such communications." *Sells*, 158 F.R.D. at 394. The party seeking the disqualification bears the burden of proving confidentiality and its non-waiver. *Id.* at 1501–02.

[¶ 4] In the current case, Bernadino attended nearly every meeting between Salamanca and his attorney since July of 2002. Bernadino interpreted numerous conversations relating to Salamanca's defense and trial strategies. He directly participated in approximately twenty hours of Salamanca's discussions with his attorney. These discussions included no one else and were conducted privately. Even if attorney-client privilege does not directly include communications between a client and an interpreter, "the law will imply a relationship of confidence when it is just to do so." *Paul*, 123 F.R.D. at 277.

[¶ 5] Furthermore, this case differs from other cases because it does not involve one party's discussions with an expert whom the opposing party later retains. Salamanca neither used Bernadino as an expert nor discussed areas of Bernadino's expertise. Instead, Bernadino was a necessary component of Salamanca's communications with his attorney. Bernadino literally became the voice through which Salamanca and his attorney could speak: he became Salamanca's attorney's agent. Indeed, attorney-client "privilege extends to the necessary intermediaries

and agents through whom the communications are made." *Conforti & Eisele, Inc. v. Division of Bldg. & Constr., Dep't of the Treasury,* 170 N.J.Super. 64, 405 A.2d 487, 491 (1979). Salamanca, therefore, had an objectively reasonable expectation that his communications to Bernadino would remain confidential. *Cf. United States v. Grajales–Montoya,* 117 F.3d 356 (8th Cir. 1997) (prosecution allowed to call courtroom interpreter to testify about the translation of a note between two conspirators since interpreter acted in an official capacity during the courtroom proceedings and was not privy to any confidential communications between the defendant and his attorney).

[¶ 6] Additionally, Salamanca exchanged privileged information with his attorney, to which Bernadino was privy. Had Salamanca and his attorney not needed an interpreter, attorney-client privilege would have protected these portions of their conversations. This protection remains regardless of the interpreter's presence. Indeed, the privilege extends to all necessary agents of the attorney regardless of the capacity in which the agent acts. *Id.* at 490. "The policy behind the privilege is to promote full and free discussion between a client, his attorney and the attorney's agents in order to prepare one's case." *Id.* Discussions about trial strategies and theories of the defense are privileged. Thus, Salamanca has met the second prong of the test necessary to disqualify Bernadino from testifying as the government's expert.

[¶ 7] The confidential information acquired by Bernadino, moreover, is substantially related to the subject matter of his testimony. *Chamberlain Group,* 2002 WL 653893 at *4. Bernadino translated conversations between the defendant and his attorney which addressed the theories of Salamanca's defense, Salamanca's interpretation of certain drug transactions involving Walter Gonzalez, and Salamanca's description of his relationship with Gonzalez. The government wants Bernadino to testify about his translation of a phone conversation between Gonzalez and Salamanca recorded by undercover agents. Bernadino knows Salamanca's explanation of this conversation and his account of the transaction between Gonzalez and the undercover agents. Bernadino's testimony regarding the phone conversation, therefore, is directly linked to confidential information Bernadino acquired through his involvement with Salamanca.

[¶ 8] There is no evidence that Salamanca waived the attorney-client privilege. His discussions with his attorney involved only three people: Salamanca, his attorney, and Bernadino. Salamanca did not permit his attorney to discuss privileged information with any outside parties. Salamanca promptly objected to the government's notice of using Bernadino as an expert. To preserve attorney-client privilege, "the privilege should enable a client to take appropriate action to protect such discussions from disclosure to his adversary." *Id.*

[¶ 9] Salamanca has met the test necessary to disqualify an expert: he objectively and reasonably believed that his communications with his attorney through the interpreter were confidential, these communications included privileged information, and Salamanca did not waive the attorney-client privilege. "Under those circumstances, the risk of disclosure of confidential information is high and the public's trust in the integrity of the judicial system is at stake." *Chamberlain Group,* 2002 WL 653893 at *5. Disqualifying Bernadino as an expert will preserve the integrity of the judicial process, promote fundamental fairness, and prevent any possible conflict of interest. *Sells,* 158 F.R.D. at 393, *Chamberlain Group,* 2002 WL 653893 at *3. *See also State v. Van Pham,*

234 Kan. 649, 675 P.2d 848, 861 (1984) (court stated that permitting defendant's personal interpreter to act in a "dual capacity" as the official court interpreter "would be approaching conflict of interest in the greatest degree").

## CONCLUSION

[¶ 10] Bernadino's relationship as an interpreter for the defendant disqualifies him from testifying for the government. A confidential relationship exists between Salamanca, his attorney, and Bernadino, during which Bernadino acquired privileged information. This subject matter, moreover, directly relates to Bernadino's proposed testimony. Allowing him to testify would create a conflict of interest and an appearance of impropriety.

[¶ 11] Accordingly, it is hereby

[¶ 12] ORDERED that defendant's objections to the government's expert witness (Docket 129) are sustained and Bernadino is disqualified from testifying for the government as an expert witness.